**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH COLLINS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MASONITE INTERNATIONAL CORPORATION, ROBERT J. BYRNE, HOWARD C. HECKES, JONATHAN F. FOSTER, PETER R. DACHOWSKI, FRANCIS M. SCRICCO, JODY L. BILNEY, DAPHNE E. JONES, JAY I. STEINFELD, and BARRY A. RUFFALO,<br><br>　　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Kenneth Collins ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.　Plaintiff brings this stockholder action against Masonite International Corporation ("Masonite" or the "Company") and its corporate directors for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Masonite to Owens Corning ("Owens Corning") through its affiliates (the "Proposed Transaction").

2.　On February 8, 2024, Masonite entered into an Arrangement Agreement with Owens Corning, and Owens Corning's wholly owned subsidiary, MT Acquisition Co ULC ("Purchaser") (the "Arrangement Agreement"). Pursuant to the terms of the Arrangement

Agreement, Owens Corning will acquire Masonite for $133.00 in cash per share of Masonite common stock.

3. On March 22, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Masonite stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and Jefferies LLC ("Jefferies"); and (iii) potential conflicts of interest faced by Jefferies and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Masonite stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Masonite stockholders to vote on the Proposed Transaction is currently scheduled for April 25, 2024. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Masonite's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Masonite's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

**PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, the owner of shares of Masonite common stock.

10. Defendant Masonite is a British Columbia corporation with its corporate headquarters located at 1242 East 5th Avenue, Tampa, Florida 33605. Masonite's shares trade on the New York Stock Exchange under the ticker symbol "DOOR." Masonite is a leading global designer, manufacturer, marketer and distributor of interior and exterior doors and door solutions for the residential and non-residential building construction markets' new construction and repair, renovation and remodeling sectors. The Company's three reportable segments are North American Residential, Europe, and Architectural. The North American Residential segment focuses on delivering high-quality interior doors made from wood and recycled wood fibers, durable exterior doors in various designs, materials and sizes and high-quality components to customers primarily in the U.S. and Canada. The European segment offers an extensive portfolio of recycled wood fiber interior doors and energy-efficient, durable composite exterior doors serving customers primarily in the United Kingdom. The Architectural segment specializes in crafting precision

3

wood interior doors for non-residential building applications serving a variety of sectors, including hospitality, healthcare, education and mixed-use facilities.

11. Defendant Robert J. Byrne is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Howard C. Heckes has been President, Chief Executive Officer and a director of the Company at all times relevant hereto.

13. Defendant Jonathan F. Foster is and has been a director of the Company at all times relevant hereto.

14. Defendant Peter R. Dachowski is and is and has been a director of the Company at all times relevant hereto.

15. Defendant Francis M. Scricco is and has been a director of the Company at all times relevant hereto.

16. Defendant Jody L. Bilney is and has been a director of the Company at all times relevant hereto.

17. Defendant Daphne E. Jones is and has been a director of the Company at all times relevant hereto.

18. Defendant Jay I. Steinfeld is and has been a director of the Company at all times relevant hereto.

19. Defendant Barry A. Ruffalo is and has been a director of the Company at all times relevant hereto.

20. Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**The Proposed Transaction**

21. On February 9, 2024, Masonite announced that it had entered into the Proposed Transaction, stating, in relevant part:

> TOLEDO, Ohio and TAMPA, Florida — February 9, 2024 — Owens Corning (NYSE: OC), a leader in global building and construction materials, and Masonite International Corporation ("Masonite") (NYSE: DOOR), a leading global provider of interior and exterior doors and door systems, today announced they have entered into a definitive agreement under which Owens Corning will acquire all outstanding shares of Masonite for $133.00 per share in cash, representing an approximate 38% premium to Masonite's closing share price on February 8, 2024 and an approximate 46% premium to Masonite's 20-day volume-weighted average price. The implied transaction value is approximately $3.9 billion, implying a purchase multiple of approximately 8.6x 2023E adjusted EBITDA2 or 6.8x when including synergies of $125 million.
>
> The addition of Masonite's market-leading doors business creates a new growth platform for Owens Corning, strengthening the company's position in residential building materials and extending its offering of highly valued products and brands. Leveraging Owens Corning's unique commercial capabilities and proven go-to-market model serving contractors, builders, and distributors, the company expects to build on Masonite's strong track record of innovation, brand quality, and category excellence to further grow in the doors market.
>
> Founded in 1925, Masonite designs, manufactures, and markets doors and door systems, with a vertically integrated manufacturing model serving both repair and remodel and new construction demand. Masonite operates 64 manufacturing and distribution facilities, primarily in North America, and has over 10,000 employees globally.
>
> **Strategic and Financial Benefits**
>
> - *Expands Owens Corning's Leadership Position in Branded Residential Building Products*: The acquisition of Masonite and entry into doors adds a highly complementary line of innovative products and advances Owens Corning's strategy to expand its building materials offering in residential applications. Both companies provide best in class products and brands, focus on building strong customer partnerships, and differentiate through quality, service, sustainability, and innovation. With the acquisition, Owens Corning's revenue generated from North American residential applications will grow to 60% of its total revenue.

5

- *Creates Scalable New Growth Platform Leveraging Combined Commercial, Operational, and Innovation Capabilities*: Owens Corning expects to leverage both companies' best in class brands, extensive customer and channel knowledge, manufacturing excellence, and material science expertise to grow Masonite's top-line reaching adjusted EBITDA margins of approximately 20%. The acquisition also increases Owens Corning's total addressable market by $27 billion and creates a platform to drive new growth opportunities in other product adjacencies.

- *Enhances Owens Corning's Attractive Financial Profile*: With this transaction, Owens Corning grows revenue to $12.6 billion, with adjusted EBITDA of $2.9 billion on a synergized pro forma basis[1] and with reduced ongoing capital intensity. Owens Corning expects cost synergies of approximately $125 million annually, generated through scale and operational savings, with the majority realized by the end of Year 2 post-close. The acquisition drives meaningful shareholder value creation with ROIC exceeding Owens Corning's cost of capital by the end of Year 3 post-close.

- *Generates Strong Free Cash Flow to Support Rapid Deleveraging and Capital Allocation Strategy*: On a synergized basis, the acquisition is expected to be low double-digit percentage accretive to free cash flow by the end of 2025. After accounting for transaction financing, Owens Corning expects net debt-to-EBITDA well within its stated 2-3x target range, deleveraging to 2.0x by year-end 2024. Owens Corning is committed to maintaining its solid investment grade rating and returning approximately 50% of free cash flow to shareholders over time.

**Transaction Details, Timing, and Approvals**

The transaction will be implemented by way of a statutory plan of arrangement pursuant to the Business Corporations Act (British Columbia). The Boards of Directors of both companies have unanimously approved the transaction. The transaction is expected to close mid-2024, subject to Masonite shareholder approval, regulatory approvals, and other customary closing conditions including the issuance of interim and final orders by the Supreme Court of British Columbia approving the plan of arrangement. The transaction will be financed by cash on hand and committed debt financing of $3 billion provided by Morgan Stanley Senior Funding, Inc.

Following the closing, Masonite will operate as a reportable segment and will maintain Masonite's brands and a presence in Tampa, Florida.

**Advisors**

Morgan Stanley & Co. LLC is acting as lead financial advisor to Owens Corning, Lazard Freres & Co. LLC provided additional advice to the Owens Corning Board of Directors, and Davis Polk & Wardwell LLP is acting as Owens Corning's legal counsel, and Stikeman Elliott LLP is acting as Owens Corning's Canadian legal counsel.

Goldman Sachs is acting as lead financial advisor, and Jefferies also is acting as financial advisor, to Masonite. Wachtell, Lipton, Rosen & Katz is acting as Masonite's legal counsel, and Cassels Brock & Blackwell, LLP is acting as Masonite's Canadian legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

22. On March 22, 2024, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Masonite stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors, Goldman Sachs and Jefferies; and (iii) potential conflicts of interest faced by Jefferies and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Masonite*

23. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

24. Critically, the Proxy Statement fails to disclose the unlevered free cash flows that the Company was forecasted to generate during the fiscal years 2023 through 2028, relied upon by the Board's financial advisors, Goldman Sachs and Jefferies in connection with their respective discounted cash flow analyses. A discounted cash flow analysis is considered the premier and

most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or unlevered free cash flows) are the core component of the analysis.[1] The unlevered free cash flows formed the basis of the discounted cash flow analyses of Masonite that Goldman Sachs and Jefferies performed in connection with their fairness opinions. *See* Proxy Statement at 51, 60.

25. The Proxy Statement includes a summary of certain of Masonite management's financial projections for fiscal years ending 2024 through 2028. *See id.* at 63. Yet, this summary fails to include the most important projections – the Company's unlevered free cash flows. The Proxy Statement further fails to disclose how the unlevered free cash flows were calculated and the underlying line items. The omission of the unlevered free cash flows and underlying line items renders the projections on page 63 and the summaries of Goldman Sachs' and Jefferies' respective discounted cash flow analyses of Masonite set forth on pages 51 and 60 of the Proxy Statement, respectively, incomplete and misleading, because the Proxy Statement provides a materially incomplete and misleading valuation picture of the Company.

26. Additionally, the Proxy Statement fails to disclose the prior sets of projections reviewed by the Board throughout the sale process. Specifically, the Proxy Statement fails to disclose: (i) the preliminary projections reviewed at the June 29, 2023 Board meeting (*see* Proxy Statement at 38); (ii) the revised projections reviewed at the July 6, 2023 Board meeting (*see id.*); (iii) the updated financial projections reviewed at the October 2, 2023 Board meeting (*see id.* at

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Court of Chancery of Delaware has employed the discounted cash flow analysis method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.*, C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the discounted cash flow analysis method to be the preeminent method of valuation).

40); and (iv) the "downward sensitivity case" projections reviewed at the January 17, 2024, Board meeting (*see id.* at 42).

27. The Proxy Statement further fails to disclose a summary of the sensitivities discussed at the January 17, 2024, Board meeting. *See id*.

28. In addition, the Proxy Statement fails to disclose all line items underlying the Company's Adjusted EBITDA.

*Material Misrepresentations and/or Omissions Concerning Goldman Sachs' and Jefferies' Financial Analyses*

29. The Proxy Statement fails to disclose material information concerning Goldman Sachs' and Jefferies' financial analyses.

30. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used by Goldman Sachs in the analysis, the Proxy Statement fails to disclose a quantification of: (i) Masonite's terminal year estimate of EBITDA used to calculate the terminal values for the Company, as well as the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (iii) Masonite's net debt; and (iv) Masonite's fully diluted outstanding shares.

31. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose a quantification of: (i) Masonite's NTM EBITDA for each of fiscal years 2024 and 2025; (ii) Masonite's net debt for each of fiscal years 2024 and 2025; (iii) Masonite's projected fully diluted outstanding shares for each of fiscal years 2024 and 2025; and (iv) the inputs and assumptions underlying the discount rate of 11.5%.

32. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected transactions analyzed by Goldman Sachs; (ii) Masonite's LTM adjusted EBITDA as of September 30, 2023;

(iii) Masonite's net debt as of September 30, 2023; and (iv) Masonite's fully diluted outstanding shares as of September 30, 2023.

33. With respect to Goldman Sachs' *Selected Public Company Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Goldman Sachs.

34. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the identities of the transactions observed; and (ii) the individual premia for each transaction.

35. With respect to Jefferies' *Discounted Cash Flow Analysis*, in addition to the unlevered free cash flows used by Jefferies in the analysis, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 11.5% to 12.5%; and (iii) the Company's fully diluted outstanding shares, as applicable.

36. With respect to Jefferies' *Selected Public Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by Jefferies; and (ii) Masonite's calendar year 2024 estimated EBITDA.

37. With respect to Jefferies' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected transactions analyzed by Jefferies; and (ii) Masonite's calendar year 2023 estimated EBITDA.

38. With respect to Jefferies' premiums paid analysis, the Proxy Statement fails to disclose: (i) the identities of the transactions observed; and (ii) the individual premia for each transaction.

*Material Misrepresentations and/or Omissions Concerning Jefferies' and Company Insiders' Potential Conflicts of Interest*

39. The Proxy Statement fails to disclose material information concerning Jefferies' potential conflicts of interest.

40. Specifically, the Proxy Statement fails to disclose whether Jefferies' engagement by the Company contemplates a fee that is contingent upon consummation of the Proposed Transaction, in addition to the $5 million Jefferies received upon delivery of its fairness opinion. *See id.* at 60.

41. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

42. Specifically, the Proxy Statement fails to disclose whether any of Owens Corning's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation, as well as well as the details of any communications related to Company insiders' participation in the post-close company.

43. In sum, the omission of the above-referenced information renders statements in the "Management Projections," "Opinion of Goldman Sachs," "Opinion of Jefferies LLC," "Background of the Arrangement," and "Interests of Masonite's Executive Officers and Directors in the Arrangement" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Masonite will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Masonite**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Masonite is liable as the issuer of these statements.

46. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

47. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

49. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Masonite within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Masonite and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

56. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Masonite, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: April 12, 2024 | **ROWLEY LAW, PLLC** |
| | *S/ Shane T. Rowley* |
| | Shane T. Rowley (SR-0740) |
| **OF COUNSEL:** | Danielle Rowland Lindahl |
| | 50 Main Street, Suite 1000 |
| **LONG LAW, LLC** | White Plains, NY 10606 |
| Brian D. Long | Tel: (914) 400-1920 |
| 3828 Kennett Pike, Suite 208 | Fax: (914) 301-3514 |
| Wilmington, DE 19807 | Email: srowley@rowleylawpllc.com |
| Tel: (302) 729-9100 | Email: drl@rowleylawpllc.com |
| Email: bdlong@longlawde.com | |
| | *Attorneys for Plaintiff* |